IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:09-CT-3166-FL

| | | |
|---|---|---|
| CHRISTOPHER COMISAC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| K.M. WHITE; TRACY JOHNS;[1] and | ) | |
| NICOLE WEAVER, | ) | |
| | ) | |
| Defendants. | ) | |

This matter comes before the court on the motion to dismiss, or in the alternative, for summary judgment[2] (DE # 43) pursuant to Federal Rule of Civil Procedure 56 filed by defendants Regional Director for the Bureau of Prison's ("BOP") Mid-Atlantic Regional Office K.M. White ("White"), Warden Tracy Johns ("Johns"), and Case Manager Nicole Weaver ("Weaver"), to which plaintiff responded. Also before the court are plaintiff's motion for discovery (DE # 40) and motion to appoint counsel (DE # 42). Defendants responded to plaintiff's motion for discovery, but did not respond to his motion to appoint counsel. In this posture, the issues raised are ripe for adjudication. For the following reasons, the court grants defendants' motion for summary judgment and denies plaintiff's motions.

---

[1] Plaintiff refers to this defendant as Tracy Johnson. However, this defendant informed the court that his correct name is Tracy Johns, and the court hereinafter will refer to him as Tracy Johns.

[2] Because defendants attached matters that are outside of the pleadings, the court construes defendants' motion as a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.

## STATEMENT OF THE CASE

On October 14, 2009, plaintiff filed the instant action pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), in the United States District Court for the Middle District of Pennsylvania. Plaintiff alleged defendants were deliberately indifferent to his risk of assault in violation of the Eighth Amendment to the United States Constitution when they transferred him from the Federal Correctional Center in Butner, North Carolina ("Butner") to the United States Penitentiary Canaan in Waymart, Pennsylvania ("Canaan"). Ultimately, this action was transferred to this district and survived frivolity review.

On March 10, 2010, defendants filed a motion to dismiss, or in the alternative, for summary judgment, arguing plaintiff failed to state a claim upon which relief may be granted, which was fully briefed. On March 29, 2011, the court granted defendants' motion for summary judgment as to plaintiff's request for specific placement in the Pennsylvania State Department of Corrections, but denied it without prejudice as to plaintiff's Eighth Amendment claim.[3] Defendants then filed a motion for reconsideration, which this court denied. On January 17, 2012, the court entered a case management order setting a discovery deadline of February 20, 2012, and a dispositive motion deadline of March 20, 2012.

On February 21, 2012, plaintiff filed a motion for discovery, to which defendants responded. Plaintiff subsequently filed a motion to appoint counsel. On March 20, 2012, defendants filed a motion for summary judgment, arguing that they did not violate plaintiff's constitutional rights.

---

[3] The court notes that defendants' first motion for summary judgment was filed in response to the complaint and prior to any meaningful discovery. For this reason, the court did not consider the merits of plaintiff's Eighth Amendment claim regarding defendants' alleged deliberate indifference to his risk of assault. Rather, the court denied this portion of defendants' motion for summary judgment without prejudice, and adopted a case schedule setting forth a discovery deadline.

2

Alternatively, defendants assert the affirmative defense of qualified immunity. Plaintiff responded to defendants' motion for summary judgment.

## STATEMENT OF FACTS

The undisputed facts are as follows. On July 26, 2005, plaintiff was sentenced, in the United States District Court for the Northern District of Alabama, to a ninety-six (96) month term of imprisonment for the offense of Bank Robbery. Cox Decl.[4] ¶ 5. On December 22, 2006, plaintiff was transferred to the United States Penitentiary in Victorville, California ("Victorville"). (DE # 22, p. 2.) After arriving in Victorville, plaintiff became a member of the gang Nazi Low Riders. Id. p. 3. Plaintiff subsequently was approached by a "ranking individual" in the Nazi Low Rider gang and asked to perform an assault on another inmate using a knife. Id. Plaintiff refused. Id. In response, the gang member threatened plaintiff that he would be "seriously assaulted if he should enter into general population at USP Victorville."[5] Id.

At some point, plaintiff was transferred from Victorville and arrived at the United States Penitentiary Coleman II ("Coleman II"). Id. At Coleman, plaintiff was stabbed by an inmate affiliated with the Aryan Circle gang. Id. Petitioner was stabbed a second time while on holdover status subsequent to his transfer from Coleman. Id.

On January 25, 2008, plaintiff, a high security level inmate, was approved to be transferred to the Federal Correctional Institution in Butner, North Carolina to participate in the BOP's Habilitation Program ("Habilitation Program"), which is a voluntary program for high security level

---

[4] Lynnell Cox ("Cox") submitted a declaration in support of defendants' first motion for summary judgment. Cox is employed by the Federal BOP as a Paralegal Specialist. Cox Decl. ¶ 1.

[5] Plaintiff states that the Nazi Low Riders gang had affiliations in every federal penitentiary across the country. (DE # 22, p. 2.)

3

inmates, like plaintiff, who have difficulty adjusting to a penitentiary environment and are at risk of victimization in such an environment. Wydo Decl. (DE # 20) ¶ 3 and Attach.[6] The Habilitation Program provides group and individual treatment to assist in the development of adaptive coping skills and to help participants make the transition to life in a medium security institution. Id. After successful completion of the Habilitation Program, inmates are re-designated to another medium security institution. Id. Upon acceptance into the voluntary Habilitation Program, all inmates sign both a consent form[7] and a standards of conduct form, indicating their acknowledgment, and acceptance of the rules of the program. Wydo Decl. (DE # 45) ¶¶ 2-3. The consent form states that expulsion from the Habilitation Program results in transfer from Butner. Id. ¶¶ 3-4. Plaintiff signed both forms prior to his acceptance into the Habilitation Program. Id.

Plaintiff began his participation in the Habilitation Program on February 29, 2008. Wydo Decl. (DE # 20) ¶ 4. In August 2008, plaintiff was issued an incident report for receiving money from an inmate he was assisting through the Inmate Companion Program, in violation of BOP policy. Id. ¶ 5. A disciplinary hearing followed and plaintiff was found guilty of "Giving/Receiving money from any person for any illegal contraband or prohibited person," and was placed in the special housing unit ("SHU") Id. Due to his disciplinary conviction and placement in the SHU, plaintiff was dismissed from the Habilitation Program. Id. ¶ 6. Subsequent to plaintiff's dismissal from the Habilitation Program and his classification as a high security level inmate, Weaver

---

[6] Dr. Michael Wydo ("Wydo") submitted declarations in support of defendants' first (DE # 20) and second (DE # 45) motions for summary judgment. Wydo is employed by the United States Department of Justice, BOP, as a psychologist at Butner. Id. ¶ 1.

[7] The Habilitation Program consent form specifically states that the inmate agrees to abide by all BOP and institution policies, and the inmate acknowledges that upon violation of these policies, or behavior disruptive to the program, he will be expelled from the program. Id. ¶ 2.

4

recommended pursuant to BOP policy, that plaintiff be redesignated to another high security level institution. Weaver Decl. ¶ 9.[8]

After his termination from the Habilitation Program and prior to his transfer from Butner, plaintiff submitted two grievances complaining that his safety would be put at risk due to his prior gang relations if he was transferred to a penitentiary. Cox Decl. ¶¶ 8, 9. On November 17, 2008, plaintiff filed a request for administrative remedy with Johns, who was the Warden at Butner, stating that he felt he would be in danger if transferred to a penitentiary due to gang threats. Id. ¶ 8. Evidently, plaintiff's request was denied, because on December 18, 2008, plaintiff filed an appeal with the Mid-Atlantic Regional Administrative Office. Id. At the time, White was the regional director. Id. Plaintiff's appeal also was denied. Id. On December 18, 2008, plaintiff filed a request for administrative remedy with the BOP's Mid-Atlantic Regional Office again claiming that he would be in danger if he were transferred to a United States Penitentiary, and appealed the institutional level response. Id. ¶ 9. On April 2, 2009, his request was denied at the regional level on the basis that Butner staff had investigated his claims and found that they lacked support. Id. The Regional Office's response also noted that plaintiff had expressed a strong desire to transfer to the United States Penitentiary Canaan ("Canaan") in Pennsylvania. Id. Attach. 5. Plaintiff did not appeal the Regional Office level's denial of his administrative remedy request. Id.

On April 14, 2009, plaintiff was transferred from Butner and arrived at Canaan on April 27, 2009. Id. ¶ 6. Plaintiff states subsequent to his transfer to Canaan, he was assaulted by an "A.B. Hitman for being a snitch." Compl. p. 4. Plaintiff then was transferred to the United States

---

[8] Nicole Weaver, a BOP case manager, submitted a declaration in support of defendants' first motion for summary judgment. Weaver Decl. ¶ 1.

Penitentiary Lee ("Lee") in Jonesville, West Virginia. On September 12, 2011, plaintiff was released from incarceration.

## DISCUSSION

A.   Motion for Discovery

On February 21, 2012, plaintiff filed a motion requesting that defendants produce several documents. In response, defendants assert that plaintiff's motion improperly was filed in direct conflict with the court's case management order which directed that discovery be completed by February 20, 2012. The discovery deadline never was extended in this case. Thus, the court DENIES plaintiff's motion to compel.

B.   Motion to Appoint Counsel

There is no constitutional right to counsel in civil cases, and courts should exercise their discretion to appoint counsel for pro se civil litigants "only in exceptional cases." Cook v. Bounds, 518 F.2d 779, 780 (4th Cir. 1975). The existence of exceptional circumstances justifying appointment of counsel depends upon "the type and complexity of the case, and the abilities of the individuals bringing it." Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by Mallard v. U.S. Dist. Court for the S. Dist. of Iowa, 490 U.S. 296 (1989) (quoting Branch v. Cole, 686 F.2d 264 (5th Cir. 1982)); see also Gordon v. Leeke, 574 F.2d 1147, 1153 (4th Cir. 1978) ("If it is apparent . . . that a pro se litigant has a colorable claim but lacks capacity to present it, the district court should appoint counsel to assist him.") Because plaintiff's claim is not complex, and where he has demonstrated through the detail of his filings he is capable of proceeding *pro se*, this case is not one in which exceptional circumstances merit appointment of counsel. Therefore, plaintiff's motions to appoint counsel are DENIED.

6

C.  Motion for Summary Judgment

  1.  Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

  2.  Analysis

    a.  Claim for Monetary Damages

Defendants assert the defense of qualified immunity. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity protects government officials "where the law is unsettled or murky." Rogers v. Pendleton, 249 F.3d 279, 286 (4th Cir. 2001). The test is whether the act was clearly forbidden, not whether in hindsight the action was wrongful. Id. at 286. The Fourth Circuit has recognized a two--pronged qualified immunity inquiry:

> First, we must decide whether a constitutional right would have been violated on the facts alleged. Next, assuming that the violation of the right is established, courts must consider whether the right was clearly

7

> established at the time such that it would be clear to an objectively
> reasonable officer that his conduct violated that right.

Bailey v. Kennedy, 349 F.3d 731, 739 (4th Cir. 2003) (internal quotations omitted). With respect to the second step, "[t]he relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was lawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001), receded from by, Pearson v. Callahan, 555 U.S. 223 (2009). A court has discretion to decide which step of the two--prong test to analyze first. Pearson, 555 U.S. at 242.

The court first determines whether defendants violated plaintiff's constitutional rights. The Eighth Amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994) (citation omitted). To establish a claim for failure to protect from violence, an inmate must show: (1) "that he is incarcerated under conditions posing a substantial risk of serious harm," id. at 834, and (2) that the prison officials had a "sufficiently culpable state of mind." Id. (internal citations and quotations omitted). When an inmate makes a challenge under the Eighth Amendment, "the requisite state of mind is one of deliberate indifference to inmate health or safety." Id. To be deliberately indifferent, a prison official must "know[] of and disregard[] an excessive risk to inmate health or safety." Id. at 837. A showing of mere negligence does not qualify as deliberate indifference. See Davidson v. Cannon, 474 U.S. 344, 347 (1986); Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999). The plaintiff also must show he suffered a serious or significant physical or mental injury as a result of the defendants' conduct. Strickler v. Waters, 989 F.2d 1375, 1380-81 (4th Cir. 1993)).

8

Plaintiff alleges that defendants acted with deliberate indifference to his risk of assault when they transferred him to Canaan. Federal courts traditionally have been reluctant to interfere in the problems of prison administration. Wetzel v. Edwards, 635 F.2d 283, 288 (4th Cir. 1980); Sewell v. Pegelow, 291 F.2d 196, 197 (4th Cir. 1961), disapproving on other grounds, District of Columbia v. Carter, 409 U.S. 418 (1973) ("It is a rule grounded in necessity and common sense, as well as authority, that the maintenance of discipline in a prison is an executive function with which the judicial branch ordinarily will not interfere."). Rather, the decisions made by prison administrators are allowed wide-ranging deference by the federal courts. Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 126 (1977). Moreover, as long as prison authorities are rationally pursuing a legitimate penological objective, the administrator has the last word. Wetzel, 635 F.2d at 288 (citation and quotation omitted); Thompson v. Shearin, No. 2011 WL 5118411, *4 (D. Md. Oct. 26, 2011) ("Of the many difficulties in managing prisons rife with acts of violence, perhaps the most difficult is discerning who is actually at risk of being harmed and who is simply taking advantage of a dangerous environment to manipulate a change in housing status.").

In this case, defendants acted with the legitimate penological objective of removing a noncompliant high security level inmate from a medium security level institution. Further, it was plaintiff's own conduct that resulted in his dismissal from the Habilitation Program.[9] Plaintiff's dismissal from the Habilitation Program then caused his case manager, Weaver, to recommend that he be transferred, pursuant to BOP policy, to a facility commensurate with his high security level classification. Housing inmates in accordance with their security classification protects both prison

---

[9] Plaintiff signed a consent form acknowledging that violation of Butner's rules would result in dismissal from the Habilitation Program, and transfer from Butner.

9

employees and other inmates. Under these circumstances, defendants were acting with a legitimate penological objective in the course of transferring plaintiff to Canaan from Butner.

Additionally, there is no evidence that defendants acted with deliberate indifference to a specific threat or a specific known risk of harm. Although plaintiff filed grievances stating that a gang had threatened his life and that he feared harm if he was transferred to a penitentiary, the record reflects that prison officials investigated the threat and found that his allegations lacked support. Cox Decl. Attach. 5. Other than his own speculative fears, plaintiff does not allege that he provided defendants any specific facts to indicate that he was at a significant risk of suffering serious harm at the hands of another inmate when he was transferred to Canaan. This is not sufficient to state an Eighth Amendment claim. See Farmer, 511 U.S. at 837; Ruefly v. Landon, 825 F.2d 792, 794 (4th Cir. Aug. 13, 1987); Stritehoff v. Green, No. CCB-09-3003, 2010 WL 4941990, *4 (D. Md. Nov. 30, 2010); Jones v. Beck, No. 5:09CV28-1-MU, 2009 WL 929130, *2 (W.D.N.C. Apr. 3, 2009). Further, the record contains evidence that plaintiff specifically requested to be transferred to Canaan because it was closer to his home in Pennsylvania.[10] Cox Decl. ¶ 9 and Attach. 5.

Because defendants acted pursuant to a legitimate penological interest and because plaintiff alleged no more than a general threat to his safety, which prison officials investigated, the court cannot find that defendants acted with deliberate indifference. Rather, at most, it could be argued that defendants acted with negligence, which is not sufficient to state a constitutional violation. See Moore v. Winebrenner, 927 F.2d 1312, 1316 (4th Cir. 1991). Based upon the foregoing, plaintiff has failed to establish a constitutional violation, and defendants are entitled to qualified immunity.

---

[10] In their April 2, 2009, response to plaintiff's grievance appeal, the regional office noted that plaintiff had a strong desire to transfer to Canaan, and that his transfer had been approved. Cox Decl. ¶ 9 and Attach. 5. Plaintiff did not appeal from the regional office level denial of his administrative remedy request. Id.

b. Injunctive Relief

Plaintiff requests that he be transferred to the Pennsylvania State Department of Corrections to complete his sentence. Plaintiff has been released from the BOP's custody. Transfer without the likelihood that an inmate will be returned to the facility where the alleged conduct occurred moots claims for injunctive or declaratory relief. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff has not alleged a likelihood to return to BOP's custody. Therefore, plaintiff has failed to state a claim upon which relief may be granted for injunctive relief against defendants, and this claim is DISMISSED without prejudice.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss, or in the alternative, for summary judgment (DE # 43) is GRANTED. Plaintiff's claim for injunctive relief is DISMISSED without prejudice. Plaintiff's motion for discovery (DE # 40) and motion to appoint counsel (DE # 42) are DENIED. The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this the 1st day of May, 2012.

LOUISE W. FLANAGAN
United States District Judge